**Lynn ROWE, Plaintiff,**

v.

**BOARD OF TRUSTEES FOR THE FLORIDA SCHOOL FOR THE DEAF AND BLIND, d/b/a The Florida School for the Deaf and Blind, an Agency of the State of Florida; Samuel R. Visconti, as an individual; and Robert T. Dawson, as an individual, Defendants.**

No. 96–997–CIV–J–21–C.

United States District Court, M.D. Florida, Jacksonville Division.

Dec. 15, 1998.

Kara E. Mort, Law Office of Kara E. Mort, St. Augustine, FL, R. Scott Hernandez, Jr., Hernandez and Hernandez, Jacksonville, FL, for Lynn Rowe.

Lynn P. Rowe, Leesburg, VA, pro se.

C. Lynne Overton, Attorney General's Office Corrections Litigation Branch, Tallahassee, FL, John F. Dickinson, F. Damon Kitchen, Malfitano, Campbell & Dickinson, Jacksonville, FL, Jeffrey Allen Cramer, Martha Della Wallace Bolton, Cramer Law Firm, Jacksonville, FL, for Defendants.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on the following motions:

- Defendant Florida School for the Deaf and Blind's Motion for Summary Judgment (Dkt.74) and Plaintiff's Memorandum (Dkt.95) in opposition thereto;
- Defendant Robert T. Dawson's Motion for Summary Judgment (Dkt.77) and Plaintiff's Memorandum (Dkt.94) in opposition thereto; and
- Defendant Samuel R. Visconti's Motion for Summary Judgment (Dkt.82) and Plaintiff's Memorandum (Dkt.93) in opposition thereto.

Plaintiff Lynn Rowe ("Rowe") brings this suit based on alleged employment discrimination during her former employment at Defendant The Florida School for the Deaf and Blind ("School"). Specifically, Plaintiff asserts that she was subjected to both gender and disability discrimination by Defendant Samuel Visconti ("Visconti"), the former Head of Human Resource Management and Development of the School, and that Defendant Robert Dawson ("Dawson"), the former President of the School, refused to investigate Plaintiff's allegations of discrimination by Visconti. Plaintiff's Amended Complaint (Dkt.34) thus asserts claims against the School under Title VII, 42 U.S.C. § 2000e

et seq. and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., as well as claims against Visconti and Dawson, in their individual capacities, for violation of her right to equal protection under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Each of the Defendants has now filed motions for summary judgment to which Plaintiff has filed responses.[1]

## I. Factual Background

Except where noted, the following facts come from the depositions, affidavits, and other materials submitted by the parties. Plaintiff is a female who suffers from Multiple Sclerosis ("MS"), a degenerative neurological disease. Plaintiff was diagnosed with MS in the mid–1980's. Plaintiff began her employment at the School in 1974 and worked there through February 9, 1995, when she resigned. Throughout her entire employment at the School, Plaintiff worked in the Personnel Department and regularly received promotions. Initially, Plaintiff's direct supervisor was James Noell. Beginning in mid–1986, Defendant Visconti replaced Noell as head of Human Resources and Plaintiff's immediate supervisor. Throughout all times relevant to this case, Defendant Dawson was the President of the School.

On February 1, 1995, Plaintiff submitted to Visconti her written letter of resignation, effective February 9, 1995. *See* Dkt. 76, Ex. C, Tab 1. The letter does not mention any sexual harassment, disability discrimination, or other employment discrimination; rather, it only contains the ambiguous statement that "[t]he last three or four years have not been my greatest." *Id.* Visconti accepted Plaintiff's resignation by memorandum, also of February 1, 1995. *See* Dkt. 76, Ex. C, Tab 2.

According to the uncontradicted affidavits of Dawson and Richard Cillo ("Cillo"), Business Manager of the School, on the day after Plaintiff submitted her letter of resignation (i.e., February 2), Plaintiff spoke separately with both Dawson and Cillo, telling them of Visconti's alleged acts of gender and disability discrimination, *see generally* Dkt. 76, Exs. A & B, and providing each of them with copies of a two-page explanation of the reasons for her resignation, *see, e.g.,* Dkt. 76, Ex. A, Tab 2.

Specifically, Plaintiff has testified in her deposition that Visconti's sexual harassment of her began in 1986 or 1987 and terminated in mid–1991, when Visconti met and began dating his current wife. Primarily, this alleged harassment took the form of improper and suggestive comments about such things as sexual intercourse and Plaintiff's physical appearance, although Plaintiff alleges that on one occasion, during an out-of-town business trip, Visconti followed Plaintiff into her hotel room and held and kissed her for roughly forty-five minutes before she made him leave.

Defendants have submitted Plaintiff's signed acknowledgment of her receipt of a copy of the School's Sexual Harassment Policy on November 16, 1990. *See* Dkt. 76, Ex. G, Tab 1. Further, in her deposition, Plaintiff stated that she was familiar with the School's Sexual Harassment Policy, and realized at the time it was allegedly occurring that Visconti's behavior constituted sexual harassment, but chose not to file any such charges or otherwise inform her employer.

According to Plaintiff, after mid–1991, Visconti did not again sexually harass her; rather, Plaintiff alleges that at that time he began treating her rudely and unfairly, primarily by yelling at her, in what she believes was an attempt to exacerbate her

---

1. Plaintiff's Responses (Dkts.93–95) to Defendants' summary judgment motions are captioned as such, and even cite the provision of the Local Rules relating to legal briefs in opposition to motions, yet they are also signed and notarized as if they were affidavits. Because Plaintiff is proceeding pro se, and is thus entitled to some leniency, the Court will consider Plaintiff's Responses as being both memoranda in response and, at least as regards the factual averments therein, counter-affidavits, to Defendants' motions.

MS and thereby force her to quit her employment. It is undisputed, even by Visconti himself, that he not infrequently raised his voice to all employees with whom he worked.

On the day (February 2) that Plaintiff informed Dawson of her allegations, he directed Cillo to investigate her claims. Additionally, that same day, both Dawson and Cillo asked Plaintiff to reconsider her resignation prior to its effective date, promising her that they would ensure that she would not be subjected to further discrimination at the hands of Visconti and offering her work in departments other than Personnel. Plaintiff, however, stated that she only wanted to work in the Personnel Department and would not return there if Visconti would be her supervisor. Prior to the effective date of her resignation, Plaintiff informed Cillo that she did not want to return to work for the School.

As part of his investigation, Cillo spoke with the Plaintiff, Visconti, past and present Personnel Department employees, and other individuals whom Plaintiff identified as having some information to corroborate her claims. After conducting the above investigation, Cillo concluded that there was no evidence to corroborate either Plaintiff's gender or her disability discrimination claims, because no one with whom he spoke had witnessed anything improper. At most, as Cillo learned, some employees had observed that Plaintiff and Visconti did not get along well with each other. These findings were contained in a written report that Cillo filed with Dawson on February 6.[2]

On February 7, 1995, Cillo met with Plaintiff, told her of his conclusions, and asked her if she had any additional information or evidence for him to consider, and that if she did he would reopen the investigation. At that time, Plaintiff first told Cillo of a "love note" that she claimed Visconti had given her and which she claimed to still have in her possession. Cillo asked Plaintiff to provide him with this note, but she did not.[3]

## II. Summary Judgment Standard

The Court will enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. On the issue of materiality, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505.

The movant bears the burden of establishing the absence of dispute over material facts. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993). Where, as here, the party opposing the summary judgment motion has the burden of proof at trial, the moving party must either point out to the Court specific portions of the record which show that the nonmoving party cannot prevail at trial, or introduce affirmative evidence negating the opposing party's case. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991). In determining whether the party seeking summary judgment has met its initial burden, the Court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606 (11th Cir.1991). Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. *Reynolds*, 989 F.2d at 469. If

**2.** Curiously, this report does not seem to have been made part of the record herein.

**3.** In her Response to the School's summary judgment motion, Plaintiff states that her claim of sexual harassment is supported by

"notes that were given to [her] by Visconti and are still in [her] possession." Dkt. 95 at p. 2; however, Plaintiff has not tendered any of these notes to the Court.

the moving party does not meet its burden, the motion for summary judgment will be denied. *Four Parcels of Real Property,* 941 F.2d at 1437. Where the moving party meets its initial burden, the burden shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608.

## III. Discussion

Having examined the Defendants' motions and memoranda, and the Plaintiff's Responses, as well as the various evidentiary submissions, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's claims. Aside from Plaintiff's general failure to adequately controvert the factual averments and legal arguments of the Defendants' motions, which failure is itself an adequate basis for the entry of summary judgment in favor of Defendants, there are also several significant, substantive flaws in Plaintiff's claims which themselves form a basis for the entry of summary judgment in favor of Defendants. These latter points are discussed below.

*Plaintiff's Title VII Claims are Time–Barred*

As the Defendant School has noted, Title VII requires that charges of discrimination thereunder be filed within a set time following their occurrence, or they are barred. *See* 42 U.S.C. § 2000e–5(e)(1) (requiring charges to be filed "within three hundred days after the alleged unlawful employment practice occurred....").

Compliance with this section "is a prerequisite to the maintenance of a Title VII action." *Paldano v. Althin Medical, Inc.,* 974 F.Supp. 1441, 1444 (S.D.Fla.1996) (citing *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 657–58 (11th Cir.1993)).

In the instant case, Plaintiff has stated unequivocally that the last instance of alleged gender discrimination by Visconti occurred in mid–1991. It is undisputed that Plaintiff did not file her Charge of Discrimination with the EEOC until July 26, and August 5, 1995. Even assuming that Visconti sexually harassed Plaintiff as late as December 31, 1991, Plaintiff would have had to file charges with the EEOC relating to such harassment on or before roughly November 1, 1992, which she clearly did not do. Plaintiff's Title VII claims are thus time-barred.[4]

Further, as Defendants have also noted, because the record is clear that Plaintiff knew at the time of Visconti's alleged sexual harassment that such conduct constituted sexual harassment, she is precluded from relying on a continuing violation theory to bring those stale claims within the limitations period. *See Roberts v. Gadsden Memorial Hospital,* 850 F.2d 1549, 1550 (11th Cir.1988).

*Plaintiff's ADA Claims Fail for Lack of Proof of Disparate Treatment*

The substance of Plaintiff's ADA claim is that Visconti intentionally was rude and verbally abusive towards her,

---

4. Corroborating her deposition testimony, Plaintiffs' Response clearly states that Visconti's sexual harassment ended in mid–1991 when he met his current wife, Meg Wadler, at which time Visconti allegedly began to verbally abuse Plaintiff in an attempt to exacerbate her MS. *See* Dkt. 95 at p. 2. In her Response, Plaintiff goes on to state "Let it be understood that the first day that Defendant Visconti meets Meg Wadler should not be construed as the end of the Defendant Visconti's harassment of the Plaintiff." To the extent that Plaintiff is thus attempting to assert that Visconti's sexual harassment continued after mid–1991, the Court disagrees, as such direct-

ly conflicts with her clear testimony. To the extent that Plaintiff asserts that Visconti's sexual harassment continued past 1991 by virtue of its transmutation into disability discrimination, the Court also disagrees. Gender and disability discrimination, although both prohibited practices, are distinct and are remedied by separate statutes. Given that Plaintiff has clearly testified that sexual harassment took place until 1991, when it stopped entirely, and that disability discrimination occurred thereafter, Plaintiff's allegations can only be read to state two separate causes of action, not one continuous, inter-mixed course of discrimination.

often yelling at her, in an attempt to exacerbate her MS. The theory underlying Plaintiff's disability discrimination (as well as her Title VII gender discrimination claim) claim is one of disparate treatment, a rather narrow theory that requires proof that an individual belonging to a protected group was treated differently by her employer than other similarly-situated individuals who do not belong to that group. *See Ferguson v. Veterans Administration*, 723 F.2d 871, 872 (11th Cir.1984). In this case there is uncontradicted evidence, both from Visconti's own admission and also according to his successor, that Visconti treated other, non-disabled employees the same way, raising his voice and otherwise being rude to them. Plaintiff has thus raised no genuine issue as to the material fact of whether she was singled out for this rude behavior because of her disability; there is simply no evidence that she was treated differently from other employees on that basis. Plaintiff's ADA claim must thus fail.[5]

*Plaintiff's Equal Protection Claim Against Dawson Cannot Overcome his Qualified Immunity*

■ Defendant Dawson relies primarily on the defense of qualified immunity to Plaintiff's claims that he violated her Fourteenth Amendment equal protection rights by allegedly refusing to investigate Plaintiff's charges of discrimination against Visconti. As noted by Defendant Dawson, Plaintiff has the burden of showing that the defendant violated clearly established constitutional rights. *See Busby v. City of Orlando*, 931 F.2d 764, 773 (11th Cir.1991). Plaintiff has failed to present any argument or facts regarding such issue, and thus it is proper to conclude that Defendant Dawson is entitled to qualified immunity.

■ Further, in addition to the issue of qualified immunity, the Court concludes that Defendant Dawson is entitled to summary judgment because Plaintiff has simply presented no evidence that creates a genuine issue of material fact as to whether Dawson intentionally failed to investigate or inadequately investigated her claims of discrimination. Rather, at most, Plaintiff can assert that she was never told of the results of the investigation. But Plaintiff has cited no authority for the proposition that she has such an entitlement as part of Defendants' asserted general obligation to provide a discrimination-free workplace, especially in light of the fact that Plaintiff left her employment almost immediately after first making her complaints, thereby short-circuiting any meaningful investigation into her claims.

Plaintiff also takes issue with the length and scope of Dawson and Cillo's investigation, which lasted only several days between the tendering of her letter of resignation and its effective date. Cillo has stated in his affidavit that he interviewed multiple co-employees and other workers at the school who could not corroborate Plaintiff's allegations. Plaintiff has in no way controverted these materials. Additionally, as Plaintiff herself told Cillo of, but then refused to provide him with, the romantic note from Visconti that she allegedly had in a safe deposit box, a veritable "smoking gun," she can hardly complain about Cillo and Dawson's decision not to redouble their investigative efforts nor their conclusion that her allegations were unverifiable.

*Plaintiff's Equal Protection Claim Against Visconti Fail*

Defendant Visconti relies on several defenses, including qualified immunity, to Plaintiff's claims that he violated her Fourteenth Amendment equal protection rights by allegedly subjecting her to gender and disability discrimination. Additionally, as to the gender discrimination component of

---

**5.** It should be noted that Plaintiff's ADA claim only presents a discrimination theory, and does not allege any failure on the part of Defendant to provide an accommodation for Plaintiff's disability.

Plaintiff's equal protection claim, Defendant Visconti raises the defense of statute of limitations.[6]

As to Defendant Visconti's assertion of the defense of qualified immunity, as noted above regarding Defendant Dawson, Plaintiff has the burden of showing that the defendant violated clearly established constitutional rights. *See Busby*, 931 F.2d at 773. Plaintiff has failed to present any argument or facts regarding such issue, and thus it is proper to conclude that Defendant Visconti is entitled to qualified immunity from Plaintiff's equal protection claims.

Further, as to the gender discrimination component of Plaintiff's equal protection claim, it is clear that the statute of limitations bars such claim. As argued in Defendant Visconti's summary judgment motion, Plaintiff seeks to remedy this asserted equal protection violation through 42 U.S.C. § 1983. Section 1983 adopts the applicable state personal injury statute of limitations which, in this case, is four years. As Plaintiff has admitted that the last instance of alleged sexual harassment took place in mid–1991, Plaintiff would have had to institute suit asserting this equal protection claim within four years of the last date of alleged harassment. The instant suit was not commenced until September 30, 1996. Thus, even assuming that the last instance of sexual harassment in 1991 took place on December 31, 1991, Plaintiff would have had to institute suit no later than December 31, 1995, which she did not do. Therefore, the Court concludes that the statute of limitations bars the gender discrimination component of Plaintiff's equal protection claim.

## IV. Conclusion

For the above-stated reasons, as well as because of Plaintiff's general failure to ad-equately controvert the factual averments and legal arguments of the Defendants' motions, the Court concludes that the Defendants are entitled to the entry of summary judgment in their favor.

Upon consideration thereof, it is hereby **ORDERED and ADJUDGED:**

1. Defendant Florida School for the Deaf and Blind's Motion for Summary Judgment (Dkt.74) is **GRANTED.**

2. Defendant Robert T. Dawson's Motion for Summary Judgment (Dkt.77) is **GRANTED.**

3. Defendant Samuel R. Visconti's Motion for Summary Judgment (Dkt.82) is **GRANTED.**

4. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff on all counts of Plaintiff's Amended Complaint.

5. The December 16,1998, Mediation Conference and December 29, 1998, Final Pretrial Conference are **CANCELLED.** This case is **REMOVED** from the February 1999 Trial Term.

6. The Clerk is **DIRECTED** to close this case and terminate all other pending motions as moot.

---

**6.** As to the disability discrimination component thereof, Visconti also raises arguments which establish the lack of a genuine issue of material fact as to discriminatory motive, a necessary element of Plaintiff's individual claim against Visconti. However, given the above disposition, the Court need not further discuss these and other arguments raised by Visconti.